# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Terry R. Foster, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 4:16-cv-02472-JMC |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Nancy A. Berryhill, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Plaintiff Terry R. Foster's ("Plaintiff") Objections to the Magistrate Judge's Report and Recommendation ("Objections") (ECF No. 23), filed on March 20, 2017. Plaintiff filed a Complaint seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Magistrate Judge issued a Report and Recommendation ("Report") determining that the Administrative Law Judge ("ALJ") performed adequate review of the record evidence and that his decision is supported by substantial evidence in the record. (ECF No. 21.) Accordingly, the Magistrate Judge recommended that the court affirm the Acting Commissioner's final decision to deny Plaintiff's application for Social Security benefits. (*Id*.)

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security ("Acting Commissioner") on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as a Defendant in this lawsuit.

# I. BACKGROUND

On May 22, 2015, Plaintiff filed an application for Social Security benefits under Title II and Title XVI of the Social Security Act, alleging that he became disabled on December 8, 2014. (ECF No. 16 at 5.) On March 8, 2016, the ALJ issued a decision determining that Plaintiff had not been under a disability as defined by the Social Security Act from December 8, 2014, the alleged onset date, through December 31, 2019, the last date of insured status. (ECF No. 14-2 at 23.) The ALJ determined that Plaintiff had the following severe impairments: ischemic heart disease, COPD, degenerative disc disease of the lumbar spine, borderline intellectual functioning, and affective disorder. (*Id.*) However, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 25.) The ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except Plaintiff could occasionally climb ramps/stairs, ladders, ropes, and scaffolds, as well as occasionally balance, stoop, kneel, crouch, and crawl. Furthermore, the ALJ stated that Plaintiff should have no exposure to extreme heat, cold, or humidity; and is limited to simple, routine tasks and time off tasks that would be accommodated by a normal break schedule. (*Id.* at 29.)

On March 8, 2016, Plaintiff requested a review of the ALJ's decision by the Social Security Administration's Appeals Council, which was denied on May 23, 2016. (ECF No. 14-2 at 2-5.)

On March 7, 2017, the Magistrate Judge issued a Report recommending that this court affirm the Acting Commissioner's decision to deny Plaintiff's application for Social Security

benefits. (ECF No. 26 at 13.) On March 20, 2017, Plaintiff filed an objection to the Magistrate Judge's Report. (ECF No. 23.) In the Objections, Plaintiff states that substantial evidence does not support the Acting Commissioner's finding that he is not functionally illiterate. (*Id.*) Plaintiff further states that the ALJ applied an incorrect "grid rule"[2] in finding that he has a limited education and was not functionally illiterate as defined by the Social Security Act. (*Id.*) On March 23, 2017, the Acting Commissioner filed a response explaining that the court should overrule Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 25.)

## II. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to for clear error, including those portions to which only "general and conclusory" objections have been made. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *See also Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the

---

[2] The Grid rules are the framework used to reach conclusions of "disabled" or "not disabled" based on a claimant's vocational factors (age, education, and work experience) and exertional residual functional capacity (sedentary, light, medium, heavy or very heavy). The Grid rules are comprised of age, education, and past work. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a).

3

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Id.* "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

### III. ANALYSIS

*A. The Magistrate Judge's Review*

The Magistrate Judge considered Plaintiff's argument that substantial evidence supports a finding that he is illiterate. Plaintiff contends that a finding that he is illiterate would change the "Grid" applied by the ALJ and would result in a decision that he has a disability. (ECF No. 23.) In the Report, the Magistrate Judge explained that Plaintiff testified that he graduated from high school, but was in special education classes for assistance in reading and mathematics, and reads at the third grade level. (ECF No. 14-2 at 61-73.) Plaintiff was a lead operator in his prior job and he repaired machines, ran a belt press, operated cutters, and changed blades. (*Id.*) During the administrative hearing, the ALJ questioned Plaintiff about a completed work history form that indicated that he wrote reports as part of his duties. (*Id.*) Plaintiff answered there was a report at

4

his prior job, but it was a checklist that only required him to check the reason a machine was not running. (*Id.*) Plaintiff testified that he did not have to use numbers, complete inventory or production reports. (*Id.*) When the ALJ asked Plaintiff how he knew which boxes to check on the form he used for machines that were not working, he answered that he had memorized it with the help of others and that he was not reading the form. (*Id.*) Plaintiff testified that the same machines were used for over twenty (20) years and he orally communicated to his coworkers if parts needed to be ordered [for the same machine]. (*Id.*) Plaintiff also testified he completed an index card with his name, date of birth, and social security number in order to apply for jobs. (*Id.*) Plaintiff stated that his wife read him letters from the Social Security Administration. (*Id.*) The Magistrate Judge explained that the ALJ evaluated Plaintiff's educational level under the proper legal standards and cited to substantial evidence to support his finding that Plaintiff was not illiterate. (ECF No. 21 at 12-13.)

### B. Plaintiff's Response to the Magistrate Judge's Report

In the Objections, Plaintiff asserts the Magistrate Judge made an error in determining that the ALJ's assessment of his educational level is supported by substantial evidence and contends the Acting Commissioner applied improper legal standards in finding that he is literate. (ECF No. 23 at 2-4.) Plaintiff maintains that he only has the ability to read at the third grade level and his reading scores are within the scope of illiteracy as defined by 20 C.F.R. § 404.1564(b)(1). Plaintiff argues that Ms. Michelle Irby, from the Greenville Literacy Association, stated he "can read and understand simple words and ideas, but has some trouble comprehending and applying what he reads." (ECF No. 23 at 3; 14-6 at 88.) Plaintiff asserts that this statement, combined with his test scores, support his testimony that he is illiterate as defined by 20 C.F.R. § 404.1564(b)(1). Plaintiff concluded that either substantial evidence supports a finding of

illiteracy or the Acting Commissioner made a legal error by finding that his ability to read at the third grade level is evidence of literacy. A finding that Plaintiff is illiterate could change the ALJ's decision and direct a finding of disability if "all factors required by 20 C.F.R. Pt. 404, Subpt. P, App. 2 (Grids), §§ 202.00(c) and (d) are met." (*Id*. at 5.) As such, the ALJ would have erred in finding that Plaintiff has a limited education and he is not functionally illiterate as defined by the Social Security Act. (*Id*.)

   C. *The Court's Ruling*

      1. Application of the Grids

The ALJ applied the Medical-Vocational Guidelines (hereafter "Grid"), 20 C.F.R. Pt. 404, Subpt. P. App. 2, Table No. 2, Rule 202.11, as the framework and determined that Plaintiff was not disabled through the date of the ALJ's decision. (ECF No. 14-2 at 47.) The Grid rules apply in the following circumstances:

> [W]here an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work. They also reflect the analysis of the various vocational factors (i.e., age, education, and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work. Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled. (*Id.*)

Table No. 2—Residual Functional Capacity: Maximum Sustained Work Capability Limited to Light Work as a Result of Severe Medically Determinable Impairment(s)[3]

| Rule | Age | Education | Previous Work Experience | Decision |
|---|---|---|---|---|
| 202.09 | Closely approaching advanced age | Illiterate or unable to communicate in English | Unskilled or none | Disabled |
| 202.10 | Closely approaching advanced age | Limited or less-at least literate and able to communicate in English | Unskilled or none | Not disabled |
| 202.11 | Closely approaching advanced age | Limited or less | Skilled or semiskilled-skills not transferable | Not disabled |
| 202.12 | Closely approaching advanced age | Limited or less | Skilled or semiskilled-skills transferable | Not disabled |
| 202.13 | Closely approaching advanced age | High school graduate or more | Unskilled or none | Not disabled |
| 202.14 | Closely approaching advanced age | High school graduate or more | Skilled or semiskilled-skills not transferable | Not disabled |
| 202.15 | Closely approaching advanced age | High school graduate or more | Skilled or semiskilled-skills transferable | Not disabled |

Rule 202.11 is used to determine if a claimant is disabled based upon his age, education, previous work experience, and exertional limitations. This rule provides that a person "closely approaching advanced age" whose education level is "limited or less," who has previous non-transferable skilled or semi-skilled work experience, and who is limited to light work, is not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.11.

Plaintiff argues that the ALJ erred in finding that he has a limited education and is not functionally illiterate as defined by the Social Security Act. (ECF No. 23 at 4.) However, a determination that he is illiterate changes the ALJ's decision and results in a finding of disability as required by "20 C.F.R. Pt. 404, Subpt. P, App. 2 (Grids), §§ 202.00(c) and (d)." (*Id*.) 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00 provides as follows:

---

[3] *See*: https://www.ssa.gov/OP_Home/cfr20/404/404-app-p02.htm (Last accessed September 27, 2017).

7

202.00 Maximum sustained work capability limited to light work as a result of severe medically determinable impairment(s).

(a) The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work. Approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy. These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience.

(b) The functional capacity to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competences for unskilled work.

(c) However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

(d) Where the same factors in paragraph (c) of this section regarding education and work experience are present, but where age, though not advanced, is a factor which significantly limits vocational adaptability (i.e., closely approaching advanced age, 50-54) and an individual's vocational scope is further significantly limited by illiteracy or inability to communicate in English, a finding of disabled is warranted.[4]

2. Evaluation of Educational Level

An ALJ must categorize a claimant's education using terms defined in the regulations. *See* 20 C.F.R. §§ 404.1564(b)(1)-(4), 416.964(b)(1)-(4). Of relevance to this case are the categories of "illiteracy" and "limited education." In disability claims, the Acting Commissioner

---

[4] Code of Federal Regulations, Appendix 2 to Subpart P of Part 404—Medical-Vocational Guidelines. *See*: https://www.ssa.gov/OP_Home/cfr20/404/404-app-p02.htm (Last accessed September 27, 2017).

8

will first make a determination regarding what level of exertion a claimant can perform in a work environment. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00. The categories are as follows: sedentary, light, medium, heavy and very heavy. (*Id.*) Once a claimant's level of exertion is determined, the Acting Commissioner will then correlate it with the grid chart (see Table No. 2) with the age, educational level, and past work and decide whether a claimant is disabled or not. (*Id.*)

The ALJ applied Rule 202.11 to attain his decision that Plaintiff was not disabled. (ECF No. 14-2 at 47.) Rule 202.11 from the grid chart applicable to residual functional capacity (light work) directs a conclusion of "nondisabled." ("[T]he claimant had the residual functional capacity to perform the full range of light work, Medical-Vocational Rule 202.11 would direct a finding of 'not disabled.'") (*Id.*)

Plaintiff contends that the ALJ's erroneous assessment of his educational level led to the improper application of Rule 202.11 and that the ALJ should have applied Rule 202.00(c) and (d). Grid rules 202.00(c) and (d) compel a finding of disability when a Plaintiff (1) is limited to light work; (2) is a person advanced in age; (3) is "limited by literacy" or unable to communicate in the English language; and (4) has a history of unskilled work or non-transferable semi-skilled or skilled work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 202.00(c) and (d). There is no dispute that Plaintiff is limited exertionally to light work, is closely approaching advanced age, and is unable to return to any of his past relevant work. The only issue raised in Plaintiff's Objections is whether the ALJ properly evaluated Plaintiff's educational level when determining his vocational profile. Given that the vocational and exertional characteristics are not in dispute, the only relevant inquiry is whether the ALJ's conclusion that Plaintiff has "limited education" is supported by substantial evidence.

9

Rule 202.11 of the grids, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, directs a finding of not disabled for a claimant of Plaintiff's age, work experience, and residual functional capacity if the claimant's education is "[l]imited or less." In contrast, if the same claimant is illiterate, the grids provide that he is disabled. *See id*. at §§ 202.00(c) and (d). In evaluating a claimant's educational level, the Social Security Administration applies the following definitions:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
>
> (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.
>
> 20 C.F.R. §§ 404.1564(b)(1)-(4), 416.964(b)(1)-(4). The numerical grade level that the claimant completed in school may not represent his actual educational abilities—these may be higher or lower. 20 C.F.R. §§ 404.1564(b), 416.964(b)(1)-(4). However, if there is no other evidence to contradict the numerical grade level, an ALJ will use it to determine a claimant's educational abilities. 20 C.F.R. §§ 404.1564(b), 416.964(b).

The ALJ's assessment at step five[5] must begin with an analysis of the applicability of the Grids, found in Appendix 2 of 20 C.F.R. Subpart P. In order to assess the vocational profile, the

---

[5] To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

Acting Commissioner requested Plaintiff to undergo consultative psychological evaluation with Caleb Loring, IV, Psy.D., in August 2015. (ECF No. 14-2 at 39-40.) The ALJ stated that portions of the consultative examination and report support Plaintiff's academic records, including standardized test results and poor reading and mathematical skills. During this consultative examination, Plaintiff's daughter completed paperwork for him, and he appeared unable to complete the paperwork on his own. (*Id*.) Plaintiff reported that he suffered a head injury on two (2) remote periods, but did not disclose any cognition problems relating to these injuries; he confirmed that he did not have routine crying spells and had never been psychiatrically hospitalized. Plaintiff's insight and judgment were good and he denied any perceptual abnormalities. (*Id*.) Dr. Loring explained that Plaintiff's academic records contained Intelligence Quotient ("IQ") scores from 1979 with a verbal IQ score in the mildly deficient range, performance scale score in the average range, and full-scale IQ score in the borderline intellectual range. (*Id*.) Results on Plaintiff's achievement tests, such as the Wide Range Achievement Test ("WRAT") and Peabody Individual Achievement Test showed scores mainly in the extremely low range and a math score in the borderline intellectual range. In general, Plaintiff's "school testing suggested a history of functioning in the extremely low to borderline range with a couple of strong areas." (*Id*.)

---

considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist  in  significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §  404.1520(a )(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

At the consultative exam, Plaintiff could spell "world" forward and backward correctly and recalled 3/3 words after a short delay. (ECF No. 14-2 at 40.) On the Wechsler Adult Intelligence Scale—Fourth Edition testing, Plaintiff obtained a verbal comprehension score of 74, a perceptual reasoning score of 79, a working memory score of 74, a processing speed score of 79, and a full-scale IQ score of 72. All of these scores fell within the borderline range. (*Id.*) On the WRAT-4 testing, Plaintiff obtained a score equivalent to the 3.4 grade level in reading and the 4.3 grade level in mathematics. (*Id.*) Dr. Loring assessed a Global Assessment of Functioning Scale ("GAF") score of 60, which "falls on the cusp of moderate and some mild symptoms and limitations of mental conditions." (*Id.*) Upon assessing all of Plaintiff's scores, Dr. Loring determined that Plaintiff functioned in the borderline intellectual range. (*Id.*)

In addition, Dr. Loring reported that Plaintiff did not show any evidence of deficits with concentration or memory. (ECF No. 14-2 at 38-40.) Plaintiff was able to learn simple tasks and complete tasks with adequate pace and persistence in a vocational setting. (*Id.*) Dr. Loring determined that Plaintiff is probably not experiencing any actual psychological limits such as accomplishing daily tasks from a psychological standpoint. (*Id.*) Dr. Loring opined that Plaintiff could likely work at a job that requires public interaction, and he would have no problem getting along with coworkers or supervisors. (*Id.*) Dr. Loring diagnosed Plaintiff with major depressive disorder, anxiety disorder, and borderline intellectual functioning. Dr. Loring reported that Plaintiff reads at the third grade level. (*Id.*) On December 15, 2015, Michelle Irby, Program Manager at the Greenville Literacy Association, wrote a letter to Plaintiff's Attorney stating that she administered the Test of Adult Basic Education in reading to Plaintiff. The results showed that Plaintiff's reading skills were "similar to those expected of students in the third month of the

third grade," and that the National Institute for Literacy "considers anyone who reads below the fifth grade level to be functionally illiterate." (ECF No. 14-6 at 88.)

Furthermore, the Acting Commissioner requested Plaintiff to undergo a diagnostic and consultative physical exam with Larry R. Korn, D.O. (ECF No. 14-2 at 34-35.) At this exam, Plaintiff reported that he was educated in special education classes and he continued to have some "limited literacy." (*Id*.) The ALJ explained that Dr. Korn opined that Plaintiff had intellectual limitations that might limit his job options "outside of the kind of heavy labor type things he has done in the past." (*Id*.) Plaintiff could not spell "world" correctly, but he could spell "fish" forward and backward with a "little bit of effort." (*Id*.) Following the exam, Dr. Korn diagnosed Plaintiff with "right hip pain, the hands, chronic low back pain with abnormal curvature and limited motion, psoriasis, coronary artery disease, and limited literacy." (ECF No. 14-2 at 34-35.)

The ALJ made the following findings:

The Social Security Regulations look to whether the claimant is unable to read or write well enough to do simple communications or to communicate well enough in the English language to perform simple unskilled jobs. In this instance, the claimant has remarked that he is able to pay bills, count change, handle a savings account, and use a checkbook/money order. The claimant confirmed that he could follow basic written instructions, and he reported that he did not follow oral instructions as well as he did written ones. The claimant performed a semiskilled job for 30 years, and a portion of his job duties required him to do "writing, complete reports, or perform duties like this." The claimant has read well enough to drive. He has remarked that he could read and write okay, and he could manage his own finances. Based on the foregoing and testing reflecting a third grade equivalent, I do not find the claimant illiterate pursuant to applicable Social Security regulation and policy. (*Id*. at 41.)

In July 2015, Plaintiff reported that he has a high school diploma, but he was in special education classes and had a history of academic difficulties with borderline intellectual functioning and functional illiteracy. (ECF No. 14-2 at 37-39.) The ALJ explained that Plaintiff's

13

school records support that Plaintiff was educated in special education classes. (*Id.*) While in school, Plaintiff's standardized test results were consistent with intellectual deficiencies and poor reading and mathematical skills. In addition, the Greenville Literacy Association program manager reported that Plaintiff reads at a third grade level. (*Id.*) However, literacy is a factual issue concerning Plaintiff's vocational profile and the resolution of which is reserved to the Acting Commissioner. (*Id.*)

At the consultative exam with Dr. Loring, Plaintiff confirmed that he had previously obtained a driver's license, but surrendered his license due to driving under the influence. (ECF No, 14-2 at 39.) During the administrative hearing, Plaintiff's attorney pointed out that the forms Plaintiff or his wife completed indicated that he drove, but he testified he has not driven in fifteen (15) years. (ECF No. 14-2 at 71). Plaintiff stated that his wife must have been thinking of herself or him riding in the car. (*Id.*) Plaintiff stated that he does not currently drive, but reported that he had a driver's license and testified that someone read the knowledge test to him. However, the ALJ explained that Plaintiff performed well enough to pass the knowledge and skills tests required in obtaining a driver's license. (*Id.* at 38-39.) The ALJ explained that Plaintiff did not lose his driver's license because of one of his alleged physical or mental conditions, and he no longer has an issue with alcohol use. (*Id.*)

The ALJ concluded that Plaintiff's remarks in the function report suggest that his physical conditions rather than mental impairments or literacy problems limits his daily activities. (ECF No. 14-2 at 26-29.) The ALJ stated that Plaintiff's previous job required that he repair machines, run a bell press, and blades and he functioned well in this capacity for at least thirty (30) years. (*Id.*) However, Plaintiff stopped working because of his cardiac conditions rather than intellectual, psychological, or literacy matters. (*Id.*) In fact, Plaintiff confirmed that he

14

could follow basic written instruction. (*Id.*) Although Plaintiff stopped working in April 2012, he performed landscaping tasks and testified that he assisted with daily chores including folding clothes, vacuuming, and washing dishes. (*Id.*) The ALJ stated that Plaintiff could follow uncomplicated oral instructions, get along with authority figures; he has never been fired from a job due to not getting along with others. (*Id.*) Plaintiff did not have discipline problems while in school. (*Id.*) In the "check-off portion of the function report," the ALJ reported that Plaintiff did not mention that he had problems with memory, concentration, understanding, following instructions, or getting along with others. (*Id.*) The ALJ explained Plaintiff had "mild restrictions" for activities of daily living and had "moderate difficulties" with respect to concentration, persistence, or pace. (*Id.*)

The ALJ noted the record contains Dr. Loring's assessment of Plaintiff's GAF score of 60, which is a "medical opinion." (ECF No. 14-2 at 46.) The ALJ explained that GAF scores assess the severity of a mental impairment, but they do not provide a reliable longitudinal picture of the claimant's mental functioning. (*Id.*) The scores are only relevant for the period the clinician indicates, which may be considerably less than the period at issue. (*Id.*) In addition, GAF scores do not predict prognosis or treatment outcomes. (*Id.*) The ALJ did not rely on GAF evidence as the primary support for findings of impairment severity or of mental limitations, but he did consider whether Plaintiff's GAF scores are supported by other clinical findings and which are consistent with other evidence in the record. (*Id.*)

The ALJ explained that Plaintiff's hospital records do not reference significant problems with his "intellectual capacity, mental status, or socialization." (*Id.* at 37-39.) Dr. Loring opined that Plaintiff "is able to learn simple tasks and complete them with adequate pace and persistence in a vocational setting." (ECF No. 14-2 at 40.) The ALJ gave controlling weight to Dr. Loring's

opinion that Plaintiff did not "show any evidence of deficits with concentration or memory" and concluded as follows:

> Dr. Loring examined the claimant in a clinical setting and administered standardized objective testing. In addition, he reviewed some of the claimant's records. However, Dr. Loring had no treating relationship with claimant, and he only examined claimant on one occasion. He did not review the entire record. His remarks and findings must be considered in conjunction with the record as a whole. (*Id*. at 44.)

The ALJ gave the opinions of Dr. Korn little weight and concluded as follows:

> Dr. Korn examined the claimant in a clinical setting and administered standardized objective testing. In addition, he reviewed some of the claimant's records. However, Dr. Loring had no treating relationship with claimant, and he only examined claimant on one occasion. He did not review the entire record. His remarks and findings must be considered in conjunction with the record as a whole. Portions of his own examination of the claimant do not support his remark fully. (*Id*. at 44.)

However, during Dr. Korn's examination, the review of system section indicates Plaintiff complained of "difficulty with concentration." (ECF No. 14-2 at 35, 37.) Dr. Korn's impression includes a diagnosis of "limited literacy" in his consultative report as a part of Plaintiff's examination. (*Id*.) Dr. Korn opined that Plaintiff had intellectual limitations that might limit his job options "outside of the kind of heavy labor type things he has done in the past." (ECF No. 14-2 at 34-35.)

## IV. CONCLUSION

The ALJ did not resolve conflicting opinions between Dr. Korn and Dr. Loring on Plaintiff's ability to concentrate and literacy with respect to his academic records and functioning educational level. In addition, Plaintiff's records demonstrate that he was taught in special education classes and reads at the third grade level. (ECF No. 14-2 at 37-40.) Plaintiff testified that he did not complete inventory sheets, complete reports or perform similar duties in his past relevant work. (ECF No. 14-2 at 61-71.) The unresolved conflicting evidence regarding

Plaintiff's functioning educational level (Dr. Korn and Dr. Loring's opinions, along with Plaintiff's academic records and testimony), raises concerns about Plaintiff's ability to read or write simple messages. *See Hackney v. Colvin*, No. CV 2:16-04882, 2016 WL 8730160, at *8 (S.D.W. Va. Dec. 23, 2016) (remanding for determination of whether Plaintiff was illiterate, whether his job skills were non-transferrable, and whether he was disabled under Rule 202.09). Under these circumstances, a remand is appropriate to permit an Administrative Law Judge to determine whether Plaintiff is illiterate and whether Plaintiff is disabled under Grid §§ 202.00(c) and (d). After reviewing all of the evidence submitted, the court **SUSTAINS** Plaintiff's Objection (ECF No. 23), **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 21), **REVERSES** the Acting Commissioner's final decision, and **REMANDS** the matter to the Acting Commissioner for further review consistent with this opinion.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 29, 2017
Columbia, South Carolina